## C. P. McCormick v. C. H. Cheveral.

(March 19, 1880.)

TRUSTEE, APPOINTMENT OF SUBSTITUTE.— See this case for an instrument in writing held insufficient to constitute a valid appointment of a substitute trustee under a power contained in a deed of trust.

EVIDENCE, VALIDITY OF.— Where the power is given in a deed of trust to appoint a substitute trustee and such appointment is to be made by a written instrument, the construction of a written instrument relied on as being or not the document contemplated and provided for in the deed of trust devolves upon the court, and it is not competent for the jury to pass upon that question.

APPEAL from Harris county.    Opinion by WALKER, P. J.

STATEMENT.— This was a suit brought by the appellee against the appellant, of trespass to try title for the recovery of a certain tract of fifty acres of land; both parties claiming through Michael McCormick. The plaintiff claimed through a deed from Michael McCormick dated 16th of January, 1868. The defendant claimed through a deed made by John Brashear, by virtue of a sale made by him, claiming to act as substituted trustee in the execution of a certain deed of trust made by Michael McCormick on the 23d day of April, 1866, conveying to Valentine Pool, trustee, his interest in said land, to secure a note made on the same day to Nicholas Murphy for $875, due twelve months thereafter. That instrument provided that if Michael McCormick failed to pay said note, Pool should sell the land after giving ten days' notice by publication in a newspaper published in Galveston county. The deed of trust did not specify the county or place where the sale should take place. The land is situated in Harris county, where the sale under the trust deed was made.

Among other provisions of the deed of trust was the following, viz.: "Should said Valentine Pool fail, refuse or neglect to act, then the said Nicholas Murphy, or his administrator or assigns, shall have the power, and such power is hereby conferred upon him or them to appoint a

substitute trustee, in writing, under his or their hand and seal."

The authority of Brashear to act as substitute trustee is contained in a letter from said Murphy, dated Galveston, December 6, 1870, to said Brashear, addressed to him at Houston, as follows:

"Capt. Boyce informed me that you wanted to know what I wanted done with the McCormick place. In answer I would say that I do not think that McCormick will ever be able to redeem it. So you will take the proper steps to close it out, and I hereby appoint you my attorney to settle the same; the papers are recorded here and in Houston; any information you may want write me. I would like to be present when sold; you will please inform me the day of sale, or send the papers that it is advertised in.

"Yours respectfully,

"N. Murphy."

The notice of sale was published by Brashear in a newspaper in Galveston, as required by the terms of the deed of trust, giving due notice of time and place, reciting in the body of it that he acted in the premises as substitute trustee duly appointed according to the terms of the deed of trust, and was signed by him in such capacity.

Opinion.— If to render the appointment of a substituted trustee valid a written document for that purpose is essential, and also that the power and authority of such substituted trustee must be derived from that source, it unquestionably, when executed, is a document which must depend, in respect to its validity to confer the power, upon the legal construction to be placed upon it. It is a question of law whether the instrument of writing thus made is, or is not, an appointment of the substitute trustee; as much so as it is a question of law whether the appointment contained in the deed of trust itself of the original trustee confers upon him authority to do the acts which he may undertake to exercise.

"The construction of a written document is matter of pure law, as it seems, in all cases where the meaning and intention of the framers is by law to be collected from the document itself. But where the meaning is to be judged of by the aid of extraneous circumstances, the construction is usually a question of fact for the jury. The construction of all deeds and other express contracts .is matter of law for the decision of the court." 1 Stark. on Ev., 525.

The construction of the letter, relied on as being, or not, the document contemplated and provided for in the deed of trust, devolved upon the court, and it was not competent for the jury to pass upon that question. The deed of trust required, in order to constitute a substitute trustee, the execution of an instrument in writing under hand and seal; a document which should evidence and constitute the authority; and, without a writing, the authority to sell and pass title to land could not have existed under the statute of frauds. The instrument thus exacted was a dispositive document, as distinguished from a "casual" one. It contemplated formality and completeness for the purpose designed. Its grade or dignity as a document was not inferior to that of other formal instruments of writing, such as deeds and express contracts.

The defendant objected to the introduction of the letter referred to, in evidence offered by the plaintiff, because, among other things, it does not purport to be a power to sell; and also objected to the introduction in evidence of the deed from Brashear to Murphy, because said Brashear was not appointed substitute trustee in the manner and upon the condition provided for in said deed of trust; and the defendant asked the court to instruct the jury that the appointment of John Brashear as substitute trustee is not in compliance with the terms of the deed of trust, and that the sale made by said Brashear is void, and that the jury will find for defendant. The evidence objected to was admitted, and the charge which was asked was refused.

The court submitted as its charge nine special issues or

inquiries requiring specific answers. The jury were not required to determine in any of them, however, whether the letter contained sufficient authority to constitute Brashear a substitute trustee. The jury responded categorically to the questions, which, in effect, amounted to finding that the parties to the deed of trust contemplated the trust sale to take place in Harris county; that the object of advertising in Galveston was because the deed of trust called for that action; that the parties to the deed of trust expected the bidders would attend the sale at Houston; they responded that, from the proof, no better price would have been bid in Galveston than at Houston (on which subject there was no evidence); that the land brought a fair price; was worth at the time of sale $1 per acre (no evidence on the subject); that the sale was a fair one; was not advertised in Harris county; might have brought more if it had been; that C. B. McCormick paid M. McCormick nothing for the land in controversy; there was no consideration; that Pool refused to act as trustee. The defendant moved for judgment in his favor, notwithstanding the verdict, but judgment was rendered for the plaintiff.

The court, it seems, submitted issues to the jury, whereby to be enabled from their findings to construe the objects, meaning and intention of the parties to both the deed of trust and the letter from Murphy, and being thus aided by the ascertainment of such facts through the special findings, it gave full effect to the letter as a valid appointment, and like validity to the sale under it.

The court, not having submitted the case to the jury for a general verdict, but having required them to find upon issues, submitted a special verdict; neither the evidence admitted under objections, nor the refusal of the charge which was asked, had any injurious effect. The special issues did not relate to those matters. Consequently, the rulings referred to did not injure the defendant in so far as the actual findings of the jury were concerned.

The course which the case took placed the evidence be-

fore the judge without prejudice to the rights of the defend-
ant, both in respect to the evidence and to the question of
law embraced in the instructions refused, the court having
rendered the judgment for the plaintiff on the whole case.
We are of opinion that the letter allows of no other con-
struction in law than that it did not by its terms make an
appointment of a substitute trustee; it did not purport to
do so; none other than an extravagant expansion of the
meaning of plain words and sentences, aided by implica-
tions, can give the letter the effect contended for by the
counsel for the appellee, or even to cause it to resemble that
which is exacted by the requirement of the deed of trust,
viz., a writing under hand and seal appointing a substitute
trustee for the original one named in that instrument. The
words used are: "You will take proper steps to close it out,
and I hereby appoint you my attorney to settle the same."

The letter purports to be in response to an inquiry made
through Capt. Boyce by Brashear as to what Murphy wanted
to have done with the McCormick land or place; implying
either some relation of agency already existing or expected
to exist between himself and Murphy, relative in some way
to Murphy's claim against the land; thereupon he in effect
constitutes Brashear his (Murphy's) *attorney* to "settle the
same," directing him as such attorney for him (Murphy),
not the mutual trustee of both himself and McCormick, but
*his attorney* to take the proper steps to "close it out." The
duties and powers conferred authorized Brashear to act for
Murphy *as his attorney;* such attorneyship may have been
that of an attorney in fact or an attorney at law, and the
authority given empowered him to require the trustee to
sell, and thus "close out" the business in hand. It did not
profess to do more; and if more was intended, its expres-
sion was withheld from the writing. It certainly did not
appoint Brashear a substitute trustee. The selection and
appointment of an attorney for such purposes would have
been consistent with Murphy's situation, and the terms of
the letter were appropriate to give effect to such an ap-

pointment. But, on the other hand, the intention to designate by writing a substitute trustee to execute a deed of trust would not suggest the appointment of an attorney. The office of an attorney, whether in fact or at law, is not that of a trustee, but the ordinary province of their duties, when requested, is, as is well enough described in the letter, " to take proper steps " to " close out " and " settle " claims secured by deeds of trust. They are not trustees, nor has trusteeship any relation to any species or class of agencies, nor is it so understood in the common use of language.

In view of the construction we place upon the pretended power to appoint, we deem it unnecessary to pursue the discussion contained in the briefs of the counsel on the subject of the aid which equity affords in cases of a power defectively executed; here there was the total absence of any power even purported to have been given. Equity has no power to make agreements for parties or to substitute one agreement for another. It will aid a defectively-executed power, but will not create a power not attempted to be conferred. Besides, " courts of equity do not in all cases interfere and grant relief in cases of defective execution of powers, but grant it only in favor of persons in a moral sense entitled to the same, and viewed with peculiar favor, and where there are no opposing equities on the other side. 1 Story, Eq. Jur., § 95. Relief is granted ordinarily in favor of purchasers, creditors, a wife, a child and a charity; but not, as in this case, in favor of the donee of the power. Id.

Murphy, the donee of the power, it appears from the evidence, was the sole bidder at the trust sale. Pool testified that he never did fail or refuse to execute the sale under the deed of trust; was never requested to do so, nor was he at and about the time of the sale absent from his home at Galveston. Murphy's testimony conflicts with this statement on cross-examination in different sets of depositions. In one he says he made the request of Pool

to make the sale; in the other he says he has forgotten all about having done so; "judges" that he did so, because it was necessary. Murphy paid no money; his bid was credited on the note he held.

These facts do not recommend the transaction strongly to the interposition of equitable relief to support a power alleged to be defectively executed, and serve to illustrate the practical importance to Michael McCormick, the maker of the deed of trust, that bidders should have been furnished with far more satisfactory evidence of authority to sell than Brashear on that occasion was able to exhibit. There was no assurance afforded, had the instrument of writing been sufficient in form and substance, that the contingency of failure or refusal of the trustee had transpired to thereby warrant the appointment of a substitute. Prudent persons might well have declined to risk their money on such a precarious title, on such doubts and chances. The donee of the power and the sole bidder and beneficiary cannot hope for aid from equity.

Remarking upon the subject of the appointment of new or substitute trustees, it is said that "no person interested could be advised to rest satisfied with the appointment of a new trustee under a power, unless the terms of the power clearly and distinctly authorize the appointment in the particular event which may have occurred. If there be the slightest doubt as to the validity or the application of the power to the case in question, the appointment, for the security of all parties, should be made only under sanction of the court." Hill on Trustees, 273.

The existence of the contingency which authorized the appointment at all, even by a court, of a substitute trustee, it seems, was at least questionable and doubtful, and the pretended appointment was even more so. The entire proceeding ought to be held void as to M. McCormick.

In regard to objections made that the sale was made in Harris county, and that the instrument which assumed to create the new trustee was not under seal, we do not deem

it necessary to decide upon them; they do not present serious difficulty to the protection of a *bona fide* purchaser for value, nor, perhaps, any to the validity of the sale at all, if in other respects regular. Minuse *v.* Cox, 3 Johns. Ch., 446.

The deed of trust gave power to the trustee to sell, without designating the place of sale; it was left to a sound discretion; a purchaser for value would be protected; remedy for injuries from abuse of its exercise would lie against the trustee and also in remedial preventive judicial process. The sale at the court-house door in the county where the land is situated would *prima facie* seem to be of all others the most proper plan.

The trustee in a deed of trust occupies the relation of agent of both parties to the instrument, and he should perform his duties with the strictest impartiality; he is clothed with the legal estate only for this purpose. Jones on Mortgages, 1770–1788. An attorney for the beneficiary appointed by the latter to "close out" and settle the debt is not an equivalent position, but one wholly inconsistent with the fiduciary character of such trust.

The plaintiff prays in the alternative by an amended petition for the enforcement of the lien to satisfy the indebtedness, evidenced by the note which he alleges that he owns; otherwise the judgment would be rendered on this appeal definitively in favor of the defendant. The case will therefore be reversed and remanded for further proceedings.